# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CLAUDIO BALLARD, KEITH DELUCIA, GARY KNUTSEN, SHEPHARD LANE, PETER LUPOLI, IRA LEEMON, JOHN KIDD, CELESTIAL PARTNERS, LLC, VEEDIMS, LLC, | § § § § § § § § | No. 337, 2019 <br><br> Court Below–Court of Chancery of the State of Delaware |
| Defendants Below– Appellants, | § § § | C.A. No. 2018-0274 |
| v. | § § | |
| JPMORGAN CHASE BANK, N.A., individually, and on behalf of itself and other creditors similarly situated, | § § § § § | |
| Plaintiff Below– Appellee. | § § | |

Submitted: August 8, 2019
Decided: August 16, 2019

Before **STRINE**, Chief Justice; **VAUGHN**, and **TRAYNOR**, Justices.

## <u>ORDER</u>

Upon consideration of the notice of interlocutory appeal, the supplemental notice of appeal, their exhibits, and the Court of Chancery's order denying Defendants' motion or certification of an interlocutory appeal, it appears to the Court that:

(1)     This appeal arises from a Court of Chancery decision granting in part and denying in part a motion to dismiss filed by Data Treasury Corporation

("DTC"), its directors, and certain affiliates (collectively, "Defendants"). The following events preceded this ruling.

(2) On June 2, 2015, the United States District Court for the Eastern District of Texas entered a judgment awarding JPMorgan Chase Bank, N.A. ("JPMorgan") damages in the amount of sixty-nine million dollars against DTC for its breach of a licensing agreement (the "Judgment"). The Judgment was affirmed on appeal[1] but remains unpaid.

(3) JPMorgan filed two complaints in the Court of Chancery in aid of its efforts to collect on the Judgment. The actions challenge DTC's payment of dividends, in different years, as unlawful under Sections 170, 172, 173, and 174 of the Delaware General Corporation Law.[2] In particular, JPMorgan alleges that Defendants, knowing that DTC owed JPMorgan a large refund under the licensing agreement, illegally issued dividends to stockholders and transferred funds to insiders and affiliates in an effort to avoid paying JPMorgan.

(4) In the first action, JPMorgan seeks to recover under Section 174 for dividends DTC paid in 2011 and 2012. Discovery is presently underway in that action, and it is not at issue in this appeal.

(5) In the second action, which is the subject of this appeal, JPMorgan sued Defendants to recover two categories of distributions that DTC allegedly

---

[1] 823 F.3d 1006 (5th Cir. 2016).
[2] 8 *Del. C.* §§ 170-74.

made unlawfully to evade its liability to JPMorgan: (i) dividends DTC paid from 2006 to 2010; and (ii) other individual transfers DTC made to insiders from 2011 to 2013.

(6) Defendants moved to dismiss the complaint, arguing that JPMorgan lacked standing under Section 174 to challenge the payments of dividends from 2006 to 2010 because it was not a creditor at that time. Defendants also argued that JPMorgan's fraudulent-transfer claims were untimely under the one-year discovery period applicable to claims filed more than four years after a challenged transfer under Section 1309(1) of the Delaware Uniform Fraudulent Transfer Act ("DUFTA")[3] and that its unlawful-dividend claims were untimely under the six-year limitations period in Section 174.[4]

(7) On July 11, 2019, the Court of Chancery issued an opinion granting in part and denying in part Defendants' motion to dismiss and, on July 19, 2019, entered an implementing order. The Court of Chancery held that: (i) JPMorgan had standing to assert a claim as a creditor of DTC under Section 174; (ii) the six-year limitations period in Section 174 is a statute of repose, to which tolling principles do not apply and, therefore, JPMorgan's unlawful dividend claim with

---

[3] A cause of action with respect to a fraudulent transfer with actual intent to hinder, delay, or defraud a creditor is extinguished unless it is brought "within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." 6 *Del. C.* § 1309(1).

[4] Under 8 *Del. C.* § 174(a), "[i]n case of any wilful or negligent violation of… § 173 of this title, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within 6 years after paying such unlawful dividend… ."

3

respect to dividends that were paid from 2006 to 2010 was untimely; and (iii) the one-year discovery period in Section 1309(1) begins to run when the fraudulent nature of a challenged transfer—as opposed to the mere occurrence of the transfer—is or could reasonably have been discovered and, therefore, JPMorgan had timely filed claims challenging as fraudulent the dividends paid from 2006 to 2010 and the individual payments made to insiders from 2011 to 2013.

(8) On June 26, 2019, Defendants asked the Court of Chancery to certify an interlocutory appeal from the court's opinion and implementing order. Defendants maintained that the opinion and order decided a substantial issue of material importance because they permit JPMorgan's challenge to Defendants' dividends and other transfers, however old, to proceed under DUFTA. Defendants further argued that the following Supreme Court Rule 42(b)(iii) factors weighed in favor of granting interlocutory review: the opinion decided an issue of first impression;[5] the Court of Chancery's interpretation of DUFTA conflicts with the decisions of other Delaware trial courts;[6] the question of law relates to the construction or application of DUFTA, which has not been, but should be, settled by this Court in advance of an appeal from a final order;[7] review of the interlocutory order may terminate the litigation;[8] and review of the interlocutory

---

[5] Del. Supr. Ct. R. 42(b)(iii)(A).
[6] Del. Supr. Ct. R. 42(b)(iii)(B).
[7] Del. Supr. Ct. R. 42(b)(iii)(C).
[8] Del. Supr. Ct. R. 42(b)(iii)(G).

order may serve considerations of justice.[9] JPMorgan opposed the request for certification but, in the alternative and in the event that the court were to certify the appeal, cross-moved for certification of an interlocutory cross-appeal of the Court of Chancery's ruling that Section 174 is a statute of repose and that JPMorgan's Section 174(a) claim was untimely.

(9) On August 7, 2019, the Court of Chancery denied Defendants' application for certification of an interlocutory appeal. Although the Court of Chancery agreed that its decision decided three substantial issues of material importance—a threshold consideration under Rule 42(b)(i)—it nevertheless concluded that interlocutory review was not warranted, a conclusion the court reached only after a careful balancing of the Rule 42(b)(iii) factors upon which Defendants rely. We agree.

(10) The Court of Chancery rejected—rightly, in our view—Defendants' contention that review of the interlocutory order may terminate the litigation, a relevant factor under Rule 42(b)(iii)(G). In particular, the court recognized that, even if its holding concerning Section 1309(1)'s one-year discovery period were reversed, at least some of JPMorgan's claims would nevertheless survive. This is so because the record suggests that JPMorgan did not know about the 2006 and 2007 dividends until February of 2018, less than one year before it filed suit. Moreover, discovery is likely to shed light on a currently murky record regarding

---

[9] Del. Supr. Ct. R. 42(b)(iii)(H).

when JPMorgan learned of the dividends paid between 2008 and 2010 and, in turn, whether the claims relating to those dividends would survive the more restrictive reading of Section 1309(1) advocated by Defendants. Add to this possibility the fact that the first action JPMorgan filed challenging the 2011 and 2012 dividends—according to the Court of Chancery, a likely candidate for consolidation—will not be abated by appellate review in this action and we are compelled to agree with the Court of Chancery's conclusion that the Rule 42(b)(iii)(G) factor does not weigh in favor of interlocutory review.

(11) Relatedly, the Court of Chancery further concluded that appellate review of some or all of the issues decided in the opinion may never be necessary, dependent upon the outcome of discovery. For example, after the completion of discovery, it may be that some or all of JPMorgan's fraudulent-transfer claims survive because no evidence is uncovered to show JPMorgan knew of certain dividends paid more than a year prior to the filing of suit. As noted above, if that were the case, these claims would survive even if the court's decision concerning the one-year discovery period in Section 1309(1) was reversed.

(12) The Court of Chancery also rejected Defendants' contention, which curiously attempted to draw support from a purported "split in jurisdictions outside of Delaware,"[10] that the court's interpretation of Section 1309(1)'s one-year

---

[10] Defendants' Motion for Certification of Interlocutory Appeal, File & ServeXpress Transaction ID 63630142, at p. 9.

discovery period exception conflicts with other decisions of Delaware trial courts. We agree with the Court of Chancery that there are no conflicts among Delaware trial courts and that the key issues in this case appear to be of first impression in Delaware.

(13)  Similarly, the Court of Chancery expressed "concern[] that a delay of discovery in this action would impede a fair disposition of the merits," pointing to, among other things, the age of the underlying transactions, the intervening death of a key witness, and "the record in the Texas action reflect[ing] efforts by DTC to obstruct and delay discovery."[11]  This concern resonates with us and weighs against interlocutory review.

(14)  Applications for interlocutory review are addressed to the sound discretion of the Court.[12]  Giving great weight to the trial court's thoughtful and thorough analysis and in the exercise of our discretion, this Court has concluded that the application for interlocutory review does not meet the strict standards for certification under Supreme Court Rule 42(b).  Exceptional circumstances that would merit interlocutory review of the Court of Chancery's decision do not exist in this case,[13] and the potential benefits of interlocutory review do not outweigh the inefficiency, disruption, and probable costs caused by an interlocutory appeal.[14]

---

[11] *JPMorgan Chase Bank, N.A. v. Ballard*, 2019 WL 3729389, at *4 (Del. Ch. Aug. 7, 2019).
[12] Del. Supr. Ct. R. 42(d)(v).
[13] Del. Supr. Ct. R. 42(b)(ii).
[14] Del. Supr. Ct. R. 42(b)(iii).

NOW, THEREFORE, IT IS ORDERED that the interlocutory appeal is REFUSED.

BY THE COURT:


*/s/ Gary F. Traynor*
Justice